FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 03, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TOBIAS WILSON, a.k.a. TOBIN SATHER, and KENNETH LAWRENCE,

　　　　　　　　　　Plaintiffs,

　　v.

GOVERNOR JAY INSLEE, STEPHEN SINCLAIR, CHERYL STRANGE, SEAN MURPHY, JEFF UTTECHT, SARAH SYTSMA, DR. SARAH KARIKO, and GREG MILLER,

　　　　　　　　　　Defendants.

No.  2:22-CV-0014-TOR

THIRD AND FINAL ORDER TO AMEND COMPLAINT; DENYING CONSTRUED MOTION FOR RECONSIDERATION; DENYING CONSTRUED MOTION FOR RECUSAL; DENYING CONSTRUED REQUEST FOR ELECTRONIC FILING EXEMPTION

BEFORE THE COURT is the Second Amended Complaint ("SAC") of Plaintiffs Tobias Wilson and Kenneth Lawrence, ECF No. 9.  Plaintiffs, both prisoners at the Airway Heights Corrections Center ("AHCC"), are proceeding *pro se* and separate filing fees have been paid on behalf of both Plaintiffs.  Defendants have not been served.

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 1

Plaintiffs seek injunctive, declaratory, and monetary relief, claiming that their Eighth Amendment rights were violated by Defendants' deliberate indifference in protecting them from heightened exposure to the novel coronavirus (COVID-19) while housed at the AHCC.[1]  ECF No. 9 at 11–37, 43–44.  Plaintiffs also claim that Defendants have been deliberately indifferent to their basic human needs and medical needs.  *Id*. at 27–33, 37–43.

As a general rule, an amended complaint supersedes the original complaint and renders it without legal effect.  *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987) (citing *London v. Coopers & Lybrand,* 644 F.2d 811, 814 (9th Cir. 1981))*, overruled in part by Lacey,* 693 F.3d at 928 (any claims voluntarily dismissed are considered to be waived if not repled).

Liberally construing the Second Amended Complaint in the light most favorable to Plaintiffs, the Court finds that at Count One, Plaintiffs have alleged

---

[1] Plaintiffs state that they are also bringing this claim under the Fourteenth Amendment.  ECF No. 9 at 30.  However, inmate claims of deliberate indifference against prison officials are analyzed under the Eighth Amendment.  *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc).

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 2

facts sufficient to state an Eighth Amendment claim against all of the named Defendants with respect to the COVID-19 response within AHCC. Plaintiffs have also alleged sufficient facts to state an Eighth Amendment claim for relief against Defendant Sytsma related to the denial of a safe work environment. At Count Two, Plaintiffs have alleged sufficient facts to state a plausible Eighth Amendment claim against Defendant Dr. Kariko for deliberate indifference to unsanitary conditions affecting Plaintiff Wilson in December 2020. At Count Three, Plaintiffs have alleged sufficient facts to state a plausible Eighth Amendment denial of medical care claim against Defendants Strange, Murphy, Uttecht, Miller, and Dr. Kariko.

After a review of Plaintiffs' SAC, the Court finds that at Count One, Plaintiffs' present allegations fail to state a claim upon which relief may be granted against any Defendant related to the processing of or responses to their grievances. The Court also finds that at Count Two, Plaintiffs' present allegations fail to state a claim upon which relief may be granted against any Defendant for denial of heat during winter weather conditions, against any Defendant, other than Dr. Kariko, for deliberate indifference to unsanitary conditions affecting Plaintiff Wilson in December 2020, or against any Defendant for deliberate indifference to unsanitary conditions concerning both Plaintiffs on January 21, 2022.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**PLAINTIFFS' ALLEGATIONS**

Plaintiffs are cellmates who assert that they both contracted COVID-19 in November/December 2020 and January/February 2022 while housed at AHCC. ECF No. 9 at 20.  Plaintiffs' SAC asserts three causes of action: (1) deliberate indifference to Plaintiffs' health, welfare, and safety related to Defendants' inadequate response to the COVID-19 health crisis; (2) deliberate indifference to Plaintiffs' basic human needs while housed in the AHCC quarantine environment; and (3) deliberate indifference to Plaintiffs' medical needs due to the suspension of clinical care during COVID-19 outbreak periods.  *Id*. at 34–43.

### A. Inadequate Response to the COVID-19 Health Crisis

First, Plaintiffs claim that Defendants created an unsafe environment by failing to correct known hazards and knowingly exposing and/or causing a vulnerable person to be repeatedly exposed to COVID-19.[2]  ECF No. 9 at 12. Plaintiffs state that COVID-19 is a serious and highly communicable virus which spreads through close contact with individuals who have contracted or become exposed to COVID-19.  *Id*. at 16.  They assert that by February 28, 2022, the Washington State DOC had a total of 13,267 confirmed COVID-19 cases among

---

[2] Plaintiffs refer to themselves in the SAC as "vulnerable Plaintiffs."  ECF No. 9 at 34, 36.

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 4

1   its adult incarcerated population. *Id*. at 17. They allege that the DOC's confirmed

2   cases and Plaintiffs' "repetitive COVID-19 infections in less than thirteen months"

3   show that "prisons in Washington [State] are not prepared to prevent the spread of

4   COVID-19, treat those who are most medically vulnerable, and contain any

5   outbreak." *Id*. at 18.

6       Plaintiffs note that on February 29, 2020, Defendant Governor Inslee issued

7   "Proclamation by the Governor 20-05 'State of Emergency'", and declared that

8   COVID-19 creates "an extreme public health risk that may spread quickly…" ECF

9   No. 9 at 19. They assert that measures were taken in an attempt to slow the spread

10  of COVID-19, including the suspension of visitation at all prisons and the

11  implementation of mask mandates. *Id*. They allege that by November 2020, each

12  of the Defendants had first-hand or constructive knowledge that COVID-19 was

13  causing the deaths of vulnerable incarcerated adults within DOC facilities. *Id*.

14      Plaintiffs claim that "each Defendant exercised deliberate indifference to

15  Plaintiffs' health and safety by failing to enforce, or ensure their subordinates

16  complied with, these COVID-19 policies – and in many cases just acknowledged

17  the instances of noncompliance, and did nothing to correct them for months while

18  outbreak after outbreak occurred in WDOC facilities." ECF No. 9 at 12. Plaintiffs

19  contend that Defendants, in their official capacities, have failed to adequately

20  manage AHCC, train or supervise their subordinates, and take swift actions to

enforce policies which would have corrected the hazards associated with COVID-19 that posed a risk to Plaintiffs' health and safety. *Id*. at 22, 30–31. Specifically, Plaintiffs allege that Defendants have failed to: (1) enforce masking policies; (2) enforce the consistent screening of DOC employees for COVID-19 symptoms; (3) enforce the denial of access to DOC facilities for exposed/infected staff; (4) ensure incarcerated adults awaiting COVID-19 testing results were properly quarantined; (5) train staff to require adequate sanitation and disinfection in AHCC living units; and (6) provide adequate sanitation and disinfectants in AHCC's living units. *Id*. at 30–31, 34–36.

Plaintiffs allege that due to Defendants' failures, they have "been infected [with COVID-19] multiple times." ECF No. 9 at 12. They allege that their "numerous infections in less than 18 months" show that AHCC has neither the capacity nor the ability to implement adequate COVID-19 prevention, testing, or care and no facility under Defendants' management can provide for Plaintiffs' safety. *Id*. at 35.

## 1. Failure to Comply with Quarantine Guidelines

Plaintiffs contend that throughout the course of the pandemic, Defendants failed to continuously enforce quarantine and/or non-mixing policies to prevent incarcerated adults from coming into contact with others who had contracted or been exposed to COVID-19. ECF No. 9 at 21. They assert that despite CDC

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 6

1    guidelines that required anyone with COVID-19 symptoms to be immediately

2    placed in medical isolation, Plaintiffs were not placed in medical isolation when

3    they exhibited COVID-19 symptoms at the onset of their infections in

4    November/December 2020 or January/February 2022, but instead were returned to

5    their shared cell in the M-Unit living environment. *Id*. at 20.  Plaintiffs also allege

6    that they observed other inmates receiving positive COVID-19 tests and remaining

7    in the unit.  *Id*.

8         They assert that although CDC guidelines require an individual who had

9    close contact with a known COVID-19 case but no symptoms to quarantine and be

10   monitored for symptoms twice daily for 14 days, DOC's labor union agent, who is

11   not named as a Defendant to this action, made it publicly known that DOC staff

12   were given specific directives to report to work while asymptomatic.  ECF No. 9 at

13   21.  Moreover, Plaintiffs allege that during each COVID-19 outbreak at AHCC,

14   they witnessed "mass migrations" of individuals being moved from unit to unit,

15   often while still awaiting the results of COVID-19 tests. *Id*. at 25.  Plaintiffs claim

16   that more than once they were made aware of individuals in a negative area with

17   positive COVID-19 test results.  *Id*.

18        Plaintiffs contend that they were both "infected [with COVID-19] multiple

19   times in less than fourteen months." ECF No. 9 at 12.  They claim that on June 10,

20   2020, AHCC medical staff notified Plaintiff Wilson on a "Health Services Kite"

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 7

that he was at a "high risk" for contracting COVID-19 and being harmed by its side effects. *Id*. at 19. They allege that on November 21, 2020, Plaintiff Wilson began exhibiting symptoms of COVID-19 for the first time, including abnormally high temperatures, which AHCC medical staff monitored at Plaintiff Wilson's cell door. *Id*. at 24. They note that Plaintiff Wilson remained housed with Plaintiff Lawrence and neither were quarantined per CDC guidelines. *Id*. They assert that Plaintiff Wilson tested positive first and Plaintiff Lawrence tested positive one week later. *Id*. They claim that neither Plaintiff was placed in quarantine while awaiting their test results. *Id*. Plaintiffs state that one week after his initial symptoms, and four days after testing positive, Plaintiff Wilson was placed in the AHCC Regional Care Facility ("RCF") quarantine environment. *Id*.

### 2. Failure to Enforce Disinfection Policies

Plaintiffs contend that throughout the pandemic, Defendants failed to continuously enforce disinfection and cleaning policies. ECF No. 9 at 21–22, 26. They contend that Defendants Sinclair, Strange, Murphy, Uttecht, Sytsma, Dr. Kariko, and Miller failed to ensure that AHCC porters, who are solely tasked with the duty of cleaning and disinfecting the environment where Plaintiffs eat, work, and reside, received adequate training and supervision in AHCC's infectious disease sanitation. *Id*. at 23.

Plaintiffs claim that as a supervisor of Washington State Correctional Industries ("WCI") workers, Defendant Sytsma denied Plaintiffs a safe work environment by incentivizing production over sanitation. ECF No. 9 at 15, 27, 37–38. They contend that Defendant Sytsma emphasized a system that did not include a sanitation step during production and intentionally ignored social distancing through person-to-person passing of raw materials, often without personal protective equipment. *Id.*

Further, Plaintiffs claim that Defendants denied Plaintiffs access to EPA-registered disinfectants. ECF No. 9 at 21, 26. They assert that Clorox Wipes, a product listed on the EPA and CDC websites, were provided to DOC staff because Defendants were aware that HEPASTAT 256, which Plaintiffs were required to use, did not protect against COVID-19. *Id.*

### 3. Failure to Take Corrective Action

Plaintiffs claim that throughout the course of the pandemic, each of the Defendants have consistently failed to take adequate corrective action despite having the authority and resources to do so. ECF No. 9 at 22. They assert that on February 1, 2021, the Washington State Department of Labor and Industries ("L&I") determined that both Plaintiffs were "injured workers", having been harmed by a lack of COVID-19 safeguards in their WCI workplace in November 2020. *Id.* at 27. Plaintiffs contend that according to the published narratives of the

1  subsequent Department of L&I fines issued in June and December 2021,

2  Defendants have failed to correct "these hazards" which continue to threaten

3  Plaintiffs' health and safety.  *Id.*

4      Specifically, Plaintiffs assert that by December 17, 2021, L&I had issued

5  three separate fines over a six-month period against DOC for "failing to provide an

6  environment free from recognized hazards that are causing, or are likely to cause,

7  serious injury or death."  ECF No. 9 at 22.  Plaintiffs contend that each of the

8  Defendants were respondents to those citations in their official capacity, and in

9  January 2022, just weeks after the Department of L&I issued its "most serious" of

10  these citations, DOC experienced another department-wide COVID-19 outbreak

11  and Plaintiffs contracted COVID-19 for a second time.  *Id.*

12      **4. Failure to Timely Respond to Grievances**

13      Plaintiffs contend that under Defendant Uttecht's supervision as Deputy

14  Director of DOC's Eastern Command, Plaintiffs' grievances related to COVID-19

15  hazards at AHCC have either been delayed until evidence is no longer available, or

16  outright denied.  ECF No. 9 at 14, 38.  Plaintiffs claim Defendant Uttecht has failed

17  to act despite being informed in writing of these conditions and Plaintiffs'

18  grievances.  *Id.* at 38.

19

20

1

**B. <u>Deliberate Indifference to Basic Human Needs</u>**

2

Plaintiffs allege that Defendants have been deliberately indifferent to their

3

basic human needs. ECF No. 9 at 20, 37–40. They state that after testing positive

4

for COVID-19 the first time in November/December 2020, Plaintiff Wilson was

5

placed in the AHCC RCF quarantine environment. *Id*. at 24. They claim that the

6

RCF was not a designated living unit and had known deficiencies which the facility

7

superintendent, who is not named as a Defendant to this action, was aware of and

8

had the opportunity to fix. *Id*. at 24–25. They allege that these deficiencies included

9

no heat because of a known HVAC malfunction, and an outdoor toilet which was

10

known to be frozen during the winter. *Id*. at 24.

11

**1. Heating Problems**

12

Plaintiffs claim that AHCC had systemic shelter deficiencies during COVID-

13

19 outbreaks, which denied Plaintiffs heat and exposed them to winter weather

14

conditions while they were suffering from COVID-19 symptoms such as fevers and

15

respiratory problems. ECF No. 9 at 39. They contend that during the cold months

16

of December 2020, and at the height of his severe COVID-19 symptoms, Plaintiff

17

Wilson was denied heat for approximately two weeks because the HVAC system

18

in the RCF was malfunctioning. *Id*. at 25. Plaintiffs assert that Plaintiff Wilson and

19

his spouse presented these facts to several media outlets and the Corrections

20

Ombudsman, but rather than investigate these claims, Defendant Governor Inslee

1    sought to discredit them.  *Id*. at 30.  They claim that Defendant Governor Inslee

2    stated, "[s]ometimes there are stories that are reported in our great media that just

3    are not accurate.  Sometimes rumors get started by individuals who are incarcerated

4    that are frankly false."  *Id*.

5        **2.  Unsanitary Conditions of Confinement**

6        Plaintiffs assert that during December 2020, Plaintiff Wilson was denied

7    unfettered access to a toilet, as the outdoor toilet system for the RCF inmates had

8    frozen.  ECF No. 9 at 25.  They claim that for days, Plaintiff Wilson and 16 other

9    inmates, not including Plaintiff Lawrence, were required to urinate and defecate on

10   top of overflowing septic in order to relieve their diarrhea while suffering from

11   COVID-19.  *Id*.  Plaintiffs contend that a single portable toilet was provided when

12   the RCF population increased to 27 patients, but corrections staff quickly became

13   cold due to the extreme weather and would close access to the toilet for at least 30

14   minutes.  *Id*.  They allege that at times, Plaintiff Wilson was "denied emergent

15   access for hours" because the septic system was malfunctioning.  *Id*.

16       Plaintiffs assert that on January 21, 2022, both Plaintiffs were denied

17   unencumbered access to a toilet while once again suffering from COVID-19

18   symptoms.  ECF No. 9 at 26.  Plaintiffs allege that they were forced to wait for

19   hours and they had to receive permission to have their door unlocked so they could

20   use the toilet.  *Id*.  Plaintiffs assert that "[p]er the 'administrative exhaustion'

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 12

decision, this was by the authority and decision of Defendant Dr. Kariko, but all defendants above her (besides [Defendant] Sytsma) had both the requisite knowledge and authority to act, and willfully chose not to." *Id*. Plaintiffs do not allege when this policy came into effect. Plaintiffs claim that, as a result, they were denied their right to bodily integrity for more than twenty hours. *Id*

Plaintiffs contend that Defendants Governor Inslee and Strange were given official written notice of the denial of bathroom facilities, but according to a grievance response from AHCC staff, bathroom facilities can be denied by Defendant Dr. Kariko under color of law during COVID-19 outbreaks. ECF No. 9 at 38. They allege that neither Defendant Governor Inslee nor Defendant Strange took steps to act. *Id*. Plaintiffs also claim that as of December 17, 2021, the Department of L&I had fined the DOC and Defendants at least three different times for conditions that Defendant Governor Inslee had "turned a blind eye to." *Id*. at 39.

### C. **Denial of Medical Care**

Plaintiffs assert that it is a practice of AHCC to discontinue clinical and specialized care during COVID-19 outbreak periods. ECF No. 9 at 27, 41. They claim that Plaintiffs experienced a denial of medical care under two such suspensions. *Id*. They assert that as a result, both Plaintiffs experienced delays in

medical care for months, and in some cases several symptoms remain untreated.  *Id.* at 41.

Plaintiffs allege that Health Services Manager ("HSM") McIntyre, who is not named as a Defendant to this action, discontinued the medical services in AHCC. ECF No. 9 at 33.  They allege that "[a]s a consequence of HSM McIntyre's closure of AHCC's medical care," Defendants Strange, Murphy, Uttecht, Miller, and Dr. Kariko knowingly failed to carry out their statutory duties by failing to ensure that AHCC provided Plaintiffs with adequate medical services.  *Id.*  Plaintiffs claim that "HSM McIntyre's closure practices…were intended to limit Plaintiffs' access to medical care as much as possible[,] especially while infected with a likely deadly disease." *Id.*

Plaintiffs claim that Defendants Strange, Murphy, Uttecht, Miller, and Dr. Kariko knew on January 21, 2022, by virtue of a DOC notice, that clinic and specialized services for AHCC inmates were being "discontinued" indefinitely. ECF No. 9 at 33.  They contend that these Defendants knew or should have reasonably known that Plaintiffs would be harmed by an interruption of medical services while they were infected with COVID-19 and suffering from known serious medical conditions.  *Id.*

Plaintiffs allege that Defendants Sinclair, Strange, Murphy, Uttecht, Miller, and Dr. Kariko are all under a constitutional duty to ensure that the DOC's health

programs comply with state and federal laws, and to provide Plaintiffs with adequate medical care.  ECF No. 9 at 40–41.  However, they assert that during COVID-19 outbreaks, Defendants, as a policy, canceled all specialized care outside of the outbreak facility until the facility was cleared to return to normal operations, which has "historically" taken six weeks.  *Id*. at 41.  Plaintiffs claim that their conditions worsened while unmonitored and untreated.  *Id*.

**1.  Plaintiff Wilson**

Plaintiffs contend that Plaintiff Wilson's specialist care was suspended, including his neurologist for seizures and migraine care, heart and vascular specialists, pulmonologists, and imaging specialists.  ECF No. 9 at 27.  They claim that during these periods of clinical care suspensions, Plaintiff Wilson's diabetes, seizures, and mental health were not monitored or treated for months.  *Id*.  Further, they allege that Plaintiff Wilson has been denied access to adequate mental health services for over two years.  *Id*.

Plaintiffs claim that Plaintiff Wilson has experienced an increase in his seizure activity and migraines since his COVID-19 infections.  ECF No. 9 at 31, 42.  They claim that for several months in early 2022, Plaintiff Wilson's neurological care was delayed because he could not access his specialist, and once care was reestablished, his treating physician expressed concern that an ordered

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 15

1   MRI of his brain from three months earlier had not been honored which limited her

2   ability to treat him for his uncontrolled seizures and migraines.  *Id.*

3          They contend that after Plaintiff Wilson's second COVID-19 infection, he

4   began experiencing daily bloody noses, heavy discharge from his eyes, ears, and

5   nose, and increasing tinnitus in both ears.  ECF No. 9 at 32.  They also assert that

6   Plaintiff Wilson's lung function has been impacted and he can no longer breathe on

7   his own while he sleeps.  *Id.* at 31.  Plaintiffs claim that although he has repeatedly

8   submitted kites and requested an examination, Plaintiff Wilson has not been

9   examined by an ear, nose, and throat specialist and his provider has done nothing

10  more than persistently prescribe allergy medications.  *Id.* at 32.  They assert that

11  allergy medications have not been effective in treating Plaintiff Wilson's symptoms

12  and have aggravated his nightly apnea condition, making it difficult to breathe and

13  almost impossible to sleep.  *Id.*

14  **2.  Plaintiff Lawrence**

15         Plaintiffs assert that early in 2022, and throughout the pandemic, Plaintiff

16  Lawrence's access to medical care has been delayed and/or denied as a result of

17  AHCC's clinical care suspensions and the failure of the medical kite system.  ECF

18  No. 9 at 32, 41.  Plaintiffs contend that his provider, for unknown reasons, has failed

19  to, or outright refused to, refer Plaintiff Lawrence to a specialist.  *Id.*  Plaintiff

20  Lawrence's provider is not named as a Defendant to this action.

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 16

1    Plaintiffs allege that prior to November 2020, Plaintiff Lawrence enjoyed

2    fairly good to average health.  ECF No. 9 at 28.  However, they claim that since

3    contracting COVID-19 in December 2020, Plaintiff Lawrence has experienced an

4    increase in migraine symptoms, abnormalities in his hematologic laboratory results,

5    exceptional nose bleed and sinus issues, and abnormalities in his ability to void his

6    bladder and fully defecate.  *Id*. at 29, 32.  Plaintiffs allege that Plaintiff Lawrence's

7    normal cognitive function has been manifestly impacted and he can no longer

8    remember words, events, or people.  *Id*. at 32.  They contend that his migraines

9    cause him chronic and substantial pain and at times he experiences so much pain

10   that he cannot bare sounds, lights, or smells.  *Id*. at 29.  Plaintiffs assert that some

11   days Plaintiff Lawrence must lie in bed all day just to keep his symptoms from

12   becoming unsustainable.  *Id*.  Plaintiffs claim that Plaintiff Lawrence's provider has

13   offered him an antidepressant to treat his migraine symptoms without an

14   examination and without knowing their cause.  *Id*.  They contend that Plaintiff

15   Lawrence has told his provider about these issues since December 2021, but he has

16   still not received an examination, treatment, or referral to a specialist for any of

17   these symptoms.  *Id*.

18   Plaintiffs assert that in December 2021, Plaintiff Lawrence sent several kites

19   to AHCC medical concerning his symptoms.  ECF No. 9 at 29.  They allege that on

20   January 9, 2022, AHCC experienced a facility-wide COVID-19 outbreak and

1    Plaintiff Lawrence did not receive responses to his kites. *Id.* They claim that once

2    AHCC resumed clinical care after the January through March 2022 COVID-19

3    outbreak, Plaintiff Lawrence once again reported his symptoms to AHCC medical

4    staff through the kite system. *Id.* at 30.  However, Plaintiffs claim that before he

5    received a response to his kite, Plaintiff Lawrence's living unit was placed in

6    quarantine and his access to clinical care was once again suspended. *Id.*

7        Plaintiffs claim that Defendants permitted systemic deficiencies to exist, and

8    that Washington State's Chief Medical Officer, Defendant Dr. Kariko, permitted a

9    policy where Plaintiffs' essential diagnostic facts were not inquired into through

10    laboratory blood work-ups, physical examinations, or imaging.  ECF No. 9 at 42.

11    Plaintiffs contend that although reportedly ordered by his provider, Plaintiff

12    Lawrence experienced intervals of weeks where blood labs were not conducted and

13    this stopped all progression of any treatment because his conditions remain

14    "unknown." *Id.*

15                **EIGHTH AMENDMENT DELIBERATE INDIFFERENCE**

16        Plaintiffs sue various DOC officials and Governor Inslee.  They bring this

17    action against all Defendants in their official and individual capacities.  ECF No. 9

18    at 1, 11, 13–15.  Plaintiffs seek injunctive, declaratory, and monetary relief. *Id.* at

19    43–44.

20

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment.  U.S. Const. amend. VIII.  Prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).  This includes a duty to protect inmates from communicable diseases.  *See, e.g.*, *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease"); *Maney v. Brown*, 516 F. Supp. 3d 1161, 1179 (D. Or. 2021) (collecting cases recognizing prison officials' duty to protect inmates from exposure to communicable diseases under the Eighth Amendment).

To state a claim under the Eighth Amendment, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted).  An Eighth Amendment claim requires a plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference."  *Snow v. McDaniel*, 681

1  F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v.*

2  *Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).  As to the objective prong of the

3  analysis, the alleged deprivation must be sufficiently "grave" or "serious."  *Wilson*

4  *v. Seiter*, 501 U.S. 294, 298 (1991).

5       As to the subjective prong of an Eighth Amendment violation, to

6  demonstrate deliberate indifference, a defendant "must both be aware of facts from

7  which the inference could be drawn that a substantial risk of serious harm exists,

8  and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  "If a [prison

9  official] should have been aware of the risk, but was not, then the [official] has not

10  violated the Eighth Amendment, no matter how severe the risk."  *Gibson v. Cnty.*

11  *of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds*

12  *by Castro*, 833 F.3d 1060.  Even prison officials or medical providers who

13  were aware of a substantial risk to inmate health or safety will not be liable

14  under Section 1983 "if they responded reasonably to the risk, even if the harm

15  ultimately was not averted."  *Farmer*, 511 U.S. at 844.

16       A. **Inadequate Response to the COVID-19 Health Crisis**

17       In Count One, Plaintiffs claim that Defendants have been deliberately

18  indifferent to the serious risk that COVID-19 posed to Plaintiffs.  ECF No. 9 at 34.

19

20

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 20

1   **1.  Allegations Against All Defendants**

2       Plaintiffs contend that the number of confirmed cases of COVID-19 within

3   the DOC and Plaintiffs' "repetitive COVID-19 infections in less than thirteen

4   months" show that "prisons in Washington [State] are not prepared to prevent the

5   spread of COVID-19, treat those who are most medically vulnerable, and contain

6   any outbreak."   ECF No. 9 at 18.   As to the objective prong of the

7   Eighth Amendment deliberate indifference analysis, the alleged deprivation must

8   be sufficiently "grave" or "serious." *Wilson*, 501 U.S. at 298.   The COVID-19

9   pandemic is "unprecedented," *Coleman v. Newsom*, 455 F. Supp. 3d 926, 928 (E.D.

10  Cal. 2020), "and no one questions that it poses a substantial risk of serious harm to

11  Plaintiffs." *Plata v. Newsom*, 445 F.Supp.3d 557, 559 (2020).   However, in order

12  to state a plausible Eighth Amendment claim, Plaintiffs must allege sufficient facts

13  to show that Defendants have acted with deliberate indifference toward the health

14  risks associated with COVID-19.

15      **a.  Official Capacity Claims**

16      To the extent that Plaintiffs seek damages from Defendants in their official

17  capacities, the Eleventh Amendment bars Plaintiffs' suit.   *See Mitchell v.*

18  *Washington*, 818 F.3d 436, 442 (9th Cir. 2016); *see also Aholelei v. Dept. of Pub.*

19  *Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The Eleventh Amendment bars suits

20  for money damages in federal court against a state, its agencies, and state officials

acting in their official capacities.")  However, the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacities. *Ex Parte Young*, 209 U.S. 123, 155–56 (1908); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007). To the extent Plaintiffs seek prospective declaratory or injunctive relief, only cognizable claims against Defendants may go forward.  *See Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).  "To prevail on a claim against a municipal entity for a constitutional violation, a plaintiff must show that an official's action that caused the plaintiff's injury was pursuant to [an] official municipal policy [or custom] of some nature." *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (en banc) (citation and internal quotation marks omitted).

Here, however, Plaintiffs have alleged no such policy or custom.  Rather, Plaintiffs note that on February 29, 2020, Defendant Governor Inslee issued "Proclamation by the Governor 20-05 'State of Emergency'", and declared that COVID-19 creates "an extreme public health risk that may spread quickly…" ECF No. 9 at 19.  Plaintiffs assert that measures were taken in an attempt to slow the spread of COVID-19, including the suspension of visitation at all prisons and the implementation of mask mandates. *Id*.  Although there may have been instances in which Defendants' policies were not *followed* — such as staff noncompliance with

quarantine or disinfection guidelines — this does not reflect that the policies *themselves* were objectively insufficient. Instead, it supports only that various staff or other individuals, who are not named as Defendants to this action, have failed to comply with Defendants' COVID-19-related policies. Such failures do not support an Eighth Amendment violation by Defendants in their official capacities. Plaintiffs have failed to allege sufficient facts to state a claim against Defendants in their official capacities.

### b. Individual Capacity Claims

The Eleventh Amendment does not bar suits seeking damages against state officials in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009). Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 23

1   constitutional violation.'" *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*, 885

2   F.2d 642, 646 (9th Cir. 1989)).  A plaintiff can establish this causal connection by

3   alleging that a defendant (1) "set[ ] in motion a series of acts by others"; (2)

4   "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor]

5   knew or reasonably should have known would cause others to inflict a constitutional

6   injury"; (3) failed to act or improperly acted in the training, supervision, or control

7   of his subordinates; (4) "acquiesc[ed] in the constitutional deprivation"; or (5)

8   engaged in "conduct that showed a reckless or callous indifference to the rights of

9   others." *Id.* at 1205–09.

10      Plaintiffs' SAC includes a generalized allegation that DOC staff were given

11   specific directives to report to work while asymptomatic despite CDC guidelines

12   that required an individual who had close contact with a known COVID-19 case but

13   had no symptoms to quarantine and be monitored for 14 days.  ECF No. 9 at 21.

14   Plaintiffs do not allege that any named Defendant issued this directive.  Moreover,

15   Plaintiffs contend that during each COVID-19 outbreak at AHCC, they witnessed

16   "mass migrations" of individuals being moved from unit to unit, often while still

17   awaiting the results of COVID-19 tests, and that on more than one occasion

18   Plaintiffs were made aware of individuals in a negative area with positive COVID-

19   19 test results.  *Id*. at 25.  They also claim that neither Plaintiff was placed in

20   quarantine while awaiting their test results, and that Defendants denied Plaintiffs

1    access to EPA-registered disinfectants. *Id*. at 21, 24, 26. These allegations,

2    however, are not tied to any named Defendant. *See Cedillos v. Youngblood*, No.

3    1:21-cv-00138-DAD-BAM (PC), 2021 WL 2534534, at *2 (E.D. Cal. June 21,

4    2021) ("Plaintiff attributes all COVID issues to the 'administration,' or the medical

5    chief or officers or nurses, but does not state what each person did or did not do

6    which violated his constitutional rights. Plaintiff must name each person he

7    believes violated his constitutional rights."). Plaintiffs fail to allege facts showing

8    how each Defendant specifically was responsible for such failings, or to allege a

9    causal link between each Defendant and the claimed constitutional violation. *See,*

10   *e.g., Id.* at *3 (concluding that prisoner failed to state Section 1983 claims due to

11   allegations of "failings in social distancing and unclean cells and showers"

12   during COVID-19 pandemic, where plaintiff failed to allege causal link between

13   defendants and violations); *Stephen v. Tilestone*, No. 2:20-cv-1841-KJN-P, 2021

14   WL 289379, at *6 (E.D. Cal. Jan. 28, 2021) (concluding that plaintiff failed to

15   allege Eighth Amendment violation for prison transfer that purportedly put him at

16   extreme risk of contracting COVID-19 because he did not allege facts showing how

17   any particular defendant violated his rights). Instead, the SAC frequently clumps

18   "Defendants" together, without detailing any specific action by each Defendant.

19   These allegations against Defendants do not state a claim upon which relief can be

20   granted.

THIRD AND FINAL ORDER TO AMEND COMPLAINT... -- 25

1    However, Plaintiffs take issue with Defendants' alleged failure "to take swift

2    actions to enforce policies which would have corrected the hazards that posed a risk

3    to Plaintiffs' health and safety." ECF No. 9 at 22. In their SAC, Plaintiffs allege

4    that on February 1, 2021, the Department of L&I determined that both Plaintiffs, as

5    WCI workers, had been harmed by a lack of COVID-19 safeguards in their WCI

6    workplace in November 2020, and that the published narratives of Department of

7    L&I fines issued in June and December 2021 show that Defendants failed to correct

8    these recognized hazards. *Id*. at 27. Plaintiffs allege that each of the named

9    Defendants, Governor Inslee, Sinclair, Strange, Murphy, Uttecht, Sytsma, Dr.

10   Kariko, and Miller, were respondents to all three Department of L&I citations, and

11   that in January 2022, just weeks after the Department of L&I issued its "most

12   serious" of these citations, the DOC experienced another department-wide COVID-

13   19 outbreak and Plaintiffs contracted COVID-19 for a second time. *Id*. at 22.

14   Supervisors may be held liable only if they "participated in or directed the

15   violations, *or knew of the violations and failed to act to prevent them*." *Taylor*, 880

16   F.2d at 1045 (emphasis added). Liberally construing Plaintiffs' allegations in the

17   SAC, Plaintiffs have alleged facts sufficient to state an Eighth Amendment claim

18   against all of the named Defendants with respect to the COVID-19 response within

19   AHCC.

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

### 2.  Allegations Against Defendant Sytsma

Plaintiffs assert that they were WCI workers at AHCC.  ECF No. 9 at 37–38. They claim that Defendant Sytsma, as supervisor of the WCI workers, denied Plaintiffs a safe work environment by incentivizing production over sanitation during and just prior to each COVID-19 outbreak at AHCC.  *Id*. at 15, 27, 37–38. They contend that Defendant Sytsma emphasized a system that did not include a sanitation step during production and intentionally ignored social distancing through person-to-person passing of raw materials, often without personal protective equipment.  *Id*. at 37–38.

As discussed above, Plaintiffs allege that on February 1, 2021, the Department of L&I determined that both Plaintiffs were "injured workers", having been harmed by a lack of COVID-19 safeguards in their WCI workplace in November 2020, and that to date, Defendant Sytsma, and all other named Defendants, who were Respondents to the Department of L&I citations, have failed to correct these hazards.  ECF No. 9 at 27.  Liberally construed, Plaintiffs have stated an Eighth Amendment claim for relief against Defendant Sytsma related to the denial of a safe work environment.

### 3.  Allegations Against Defendant Uttecht

Plaintiffs contend that under Defendant Uttecht's supervision as Deputy Director of DOC's Eastern Command, the practice at AHCC of handling Plaintiffs'

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 27

grievances related to COVID-19 hazards has been either to delay until evidence is no longer available, or outright deny their grievances.  ECF No. 9 at 14, 38.  Plaintiffs claim that Defendant Uttecht has failed to act despite Plaintiffs' grievances and being informed in writing of the conditions of which Plaintiffs complain. *Id*. at 38.

Prisoners lack a constitutional right to a specific grievance procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  Further, the failure of prison officials to entertain an inmate's administrative grievance does not violate his or her constitutional rights because the right to petition the government is the right of access to the courts, not the administrative process. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *see also Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) ("The right to petition the government for redress of grievances, however, does not guarantee a favorable response, or indeed any response, from state officials.").

To the extent that Plaintiffs may be attempting to assert a claim against Defendant Uttecht related to their grievance responses, or lack thereof, Plaintiffs' assertions regarding the processing of, and responses to, their grievances do not state a claim upon which relief may be granted.  Plaintiffs' mere dissatisfaction with the remedy process or its results cannot, without more, support a claim for relief for violation of a constitutional right.  Therefore, Plaintiffs have not stated a claim for

relief related to the processing of or responses to their grievances against Defendant Uttecht or any of the other named Defendants.

**B. Deliberate Indifference to Basic Human Needs**

In Count Two, Plaintiffs claim that Defendants have been deliberately indifferent to Plaintiffs' basic human needs  ECF No. 9 at 20, 37–40.  They claim that the RCF quarantine environment at AHCC, where Plaintiff Wilson was placed after testing positive for COVID-19 the first time, had no heat because of a known HVAC malfunction, and had an outdoor toilet which was known to be frozen during the winter.  *Id*. at 24.

**1. Heating**

Plaintiffs claim that AHCC had systemic shelter deficiencies during COVID-19 outbreaks, which denied Plaintiffs heat and exposed them to winter weather conditions while they were suffering from COVID-19 symptoms.  ECF No. 9 at 26, 40.  "The Eighth Amendment guarantees adequate heating."  *Keenan v. Hall,* 83 F.3d 1083, 1091 (9th Cir.1996).   Exposure to temperature that is merely uncomfortable, however, is not such a serious deprivation as to violate the Eighth Amendment.  *Id*.

To state a claim under the Eighth Amendment, a plaintiff must allege not only a sufficiently serious deprivation but also that "the defendant officials had actual knowledge of the plaintiffs' basic human needs and deliberately refused to

1    meet those needs." *Johnson v. Lewis*, 217 F.3d 726, 734 (9th Cir. 2000). A plaintiff

2    may prove such knowledge through inference from circumstantial evidence. *Id.*

3        Here, Plaintiffs contend that during the cold months of December 2020, and

4    at the height of his severe COVID-19 symptoms, Plaintiff Wilson was denied heat

5    for approximately two weeks because the HVAC system in the RCF was

6    malfunctioning. ECF No. 9 at 24–25. They claim that Plaintiff Wilson presented

7    information that Plaintiffs were denied heat and exposed to winter weather

8    conditions while suffering from COVID-19 symptoms to several media outlets and

9    the Corrections Ombudsman, but rather than investigate these claims, Defendant

10   Governor Inslee sought to discredit them. *Id.* at 39. Plaintiffs assert that Defendant

11   Governor Inslee stated, "[s]ometimes there are stories that are reported in our great

12   media that just are not accurate. Sometimes rumors get started by individuals who

13   are incarcerated that are frankly false." *Id.* at 39.

14       Plaintiffs have failed to allege a causal connection between any of the named

15   Defendants and Plaintiffs' claim that Plaintiff Wilson was denied heat for

16   approximately two weeks. They fail to provide sufficient factual specificity about

17   any named Defendants' awareness of this condition. While they claim that they

18   presented this information to several media outlets and the Corrections

19   Ombudsman, Plaintiffs fail to allege sufficient facts to show that Defendant

20   Governor Inslee's quote was in response to their claim of lack of heat in the AHCC.

Thus, Plaintiffs have failed to state a plausible Eighth Amendment claim against Defendants for denial of heat during winter weather conditions.

### 2. Unsanitary Conditions of Confinement

In assessing unconstitutional conditions of confinement claims, courts consider "[t]he circumstances, nature, and duration of a deprivation of these necessities." *Johnson*, 217 F.3d at 731. "The more basic the need, the shorter the time it can be withheld." *Id.* "[T]oilets can be unavailable for some period of time without violating the Eighth Amendment." *Id.* at 733. However, subjecting a prisoner to a "severe or prolonged" lack of sanitation "can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995).

### 1. Plaintiff Wilson

Plaintiffs claim that for days, Plaintiff Wilson and 16 other inmates were required to urinate and defecate on top of overflowing septic in order to relieve their diarrhea while suffering from COVID-19. ECF No. 9 at 25. They contend that when the RCF population increased to 27 patients, a single portable toilet was provided but staff would close access to the toilet for at least 30 minutes due to the cold weather. *Id.* They allege that at times, Plaintiff Wilson was "denied emergent access for hours" because the septic system was malfunctioning. *Id.* Plaintiffs

claim that all Defendants, other than Defendant Sytsma, "had both the requisite knowledge and authority to act, and willfully chose not to." *Id*. at 26.   This conclusory allegation does not state a plausible Eighth Amendment claim against Defendants.

Plaintiffs contend that Defendants Governor Inslee and Strange were given official written notice of the denial of bathroom facilities, but according to a grievance response from AHCC staff, bathroom facilities can be denied by Defendant Dr. Kariko under color of law during COVID-19 outbreaks.  ECF No. 9 at 38.  They allege that neither Defendant Governor Inslee nor Defendant Strange took steps to act. *Id*.  However, although Plaintiffs assert that Defendants Governor Inslee and Strange were given official written notice of the denial of bathroom facilities, they state that the grievance response regarding the denial of bathroom facilities was from AHCC staff, not Defendants Governor Inslee or Strange. *Id*. at 38.

Further, Plaintiffs claim that as of December 17, 2021, the Department of L&I had fined the DOC and Defendants at least three different times for conditions that Defendant Governor Inslee had "turned a blind eye to."  ECF No. 9 at 39. However, Plaintiffs assert in their SAC that the Department of L&I fines were related to a lack of COVID-19 safeguards in Plaintiffs' WCI workplace. *Id*. at 27. With respect to this allegation, Plaintiffs have not alleged sufficient facts to state an

1    Eighth Amendment violation against Defendants Governor Inslee or Strange.  *See*

2    *Johnson*, 217 F.3d at 734 (To state a claim under the Eighth Amendment, a plaintiff

3    must allege not only a sufficiently serious deprivation but also that "the defendant

4    officials had actual knowledge of the plaintiffs' basic human needs and deliberately

5    refused to meet those needs.")

6         Plaintiffs allege that Defendant Strange has been directly responsible for the

7    management of the DOC and for the administration of all adult correctional

8    programs since her appointment as Washington State's Secretary of Corrections on

9    April 29, 2021.  ECF No. 9 at 10, 14.  Plaintiffs' claims that Plaintiff Wilson and

10   other inmates were forced to urinate and defecate on top of overflowing septic

11   occurred in December 2020, several months before Defendant Strange was

12   appointed to her current position.  *Id*. at 25.  Plaintiffs' allegation that at times

13   Plaintiff Wilson was "denied emergent access for hours" because the septic system

14   was malfunctioning also occurred prior to Defendant Strange's appointment.  *Id*.

15   Plaintiffs have not alleged any facts to show that Defendant Strange was

16   deliberately indifferent to unsanitary conditions of confinement in the RCF prior to

17   her appointment as the DOC Secretary of Corrections.

18        Plaintiffs contend that the restrictions on Plaintiff Wilson's toilet use during

19   bouts of diarrhea in December 2020 were the result of a decision by Defendant Dr.

20   Kariko, and that according to a grievance response from AHCC staff, bathroom

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 33

facilities can be denied by Defendant Dr. Kariko under color of law during COVID-19 outbreaks.  ECF No. 9 at 26, 38.  Liberally construed, Plaintiffs have alleged sufficient facts to state a plausible Eighth Amendment claim against Defendant Dr. Kariko for deliberate indifference to unsanitary conditions affecting Plaintiff Wilson in December 2020.

Plaintiffs assert that Plaintiff Wilson's specialists are investigating a possible link between his spinal disease and his bowel and bladder incontinence.  ECF No. 9 at 28.  They claim that by denying Plaintiff Wilson access to a toilet with knowledge of this and other associated medical conditions, Defendants Strange, Murphy, Uttecht, and  Dr. Kariko were deliberately indifferent to Plaintiff Wilson's serious medical needs.  *Id*. at 26, 28.  Plaintiffs do not allege sufficient facts to show that Defendants Strange, Murphy, or Uttecht were aware of Plaintiff Wilson's spinal disease or his bowel and bladder incontinence.  This conclusory allegation does not state a plausible Eighth Amendment claim against Defendants Strange, Murphy, or Uttecht.  As noted above, Plaintiffs have stated a plausible claim against Defendant Dr. Kariko for deliberate indifference to unsanitary conditions affecting Plaintiff Wilson in December 2020.

## 2.  Plaintiffs Wilson and Lawrence

Plaintiffs assert that on January 21, 2022, both Plaintiffs were denied unencumbered access to a toilet while suffering from COVID-19 symptoms, they

1    were forced to wait for hours, they had to receive permission to have their door

2    unlocked to use the toilet, and they were denied their right to bodily integrity for

3    more than twenty hours. ECF No. 9 at 26.   Plaintiffs assert that Defendants

4    Governor Inslee and Strange were given official written notice of the denial of

5    bathroom facilities, but failed to take steps to act, and that the bathroom restrictions

6    were the result of a decision by Defendant Dr. Kariko.  *Id.* at 38.

7         As noted above, "toilets can be unavailable for some period of time without

8    violating the Eighth Amendment." *Johnson*, 217 F.3d at 733.  Plaintiffs' claims of

9    being denied "unencumbered access" to a toilet, waiting hours, and being required

10   to receive permission to have their door unlocked to use the toilet, as presented, do

11   not appear to be a "severe or prolonged" lack of sanitation that rises to the level of

12   an infliction of pain within the meaning of the Eighth Amendment.  *See Anderson*,

13   45 F.3d at 1314.  Although Plaintiffs allege that they were "denied their right to

14   bodily integrity for more than twenty hours[,]" they do not present facts that they

15   were denied the use of the toilet during that period of time.  ECF No. 9 at 26.

16   Further, Plaintiffs do not allege that they were suffering from incontinence or

17   diarrhea at the time.  As presented, Plaintiffs have failed to allege sufficient facts to

18   state an Eighth Amendment deliberate indifference claim against Defendants for

19   unsanitary conditions concerning both Plaintiffs on January 21, 2022.

20

1    **C. <u>Denial of Medical Care</u>**

2    In Count Three, Plaintiffs claim that Defendants have been deliberately

3    indifferent to Plaintiffs' medical needs.  ECF No. 9 at 41.  Specifically, they claim

4    that Defendants Sinclair, Strange, Murphy, Uttecht, Miller, and Dr. Kariko denied

5    Plaintiffs access to medical care during COVID-19 outbreak periods by suspending

6    clinical care due to avoidable systemic deficiencies.  *Id*. at 27, 40–41.  They allege

7    that it is a practice of AHCC to discontinue clinical and specialized care during

8    COVID-19 outbreaks and Plaintiffs have realized a denial of medical care under

9    two such discontinuances.  *Id*. at 27.  Plaintiffs claim that denials have included, but

10   are not limited to, neurologists for seizures and migraines, cardiologists, vascular

11   specialists, pulmonologists, and imaging specialists.  *Id*.  They assert that both

12   Plaintiffs experienced delays in medical care for months, and in some cases several

13   symptoms remain untreated.  *Id*. at 27–30, 41.

14   The Eighth Amendment includes the right to adequate medical and mental

15   health treatment in prison.  Prison officials or prison medical providers can be held

16   liable    if    their    "acts    or    omissions    [were]    sufficiently    harmful    to

17   evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429

18   U.S. 97, 106 (1976).  As to the objective standard for prisoners' medical

19   care claims, "society does not expect that prisoners will have unqualified access to

20   health   care."   *Hudson   v.   McMillian*,   503   U.S.   1,   9   (1992).    Therefore,

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 36

1  "deliberate indifference to medical needs amounts to

2  an Eighth Amendment violation only if those needs are 'serious.' " *Id*.  The Ninth

3  Circuit has defined a "serious medical need" in the following ways:

4      failure to treat a prisoner's condition [that] could result in further
       significant injury or the unnecessary and wanton infliction of pain[;]

5      ... [t]he existence of an injury that a reasonable doctor or patient would
       find important and worthy of comment or treatment; the presence of a

6      medical condition that significantly affects an individual's daily
       activities; or the existence of chronic and substantial pain ....

7

8  *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citations

9  omitted), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133

10  (9th Cir. 1997).

11      In the medical context, deliberate indifference can be "manifested by prison

12  doctors in their response to the prisoner's needs or by prison guards in intentionally

13  denying or delaying access to medical care or intentionally interfering with the

14  treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted).

15  Medical malpractice or negligence does not support a cause of action under

16  the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir.

17  1980) (per curiam), and a delay in medical treatment does not violate

18  the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d

19  at 1060.  If medical personnel have been "consistently responsive to [the inmate's]

20  medical needs," and the plaintiff has not shown that the medical personnel had

"subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

### 1. Plaintiff Wilson

Plaintiffs claim that during periods of clinical care suspensions in response to COVID-19 outbreaks at AHCC, Plaintiff Wilson's diabetes, seizures, and mental health have gone unmonitored and/or untreated for months. ECF No. 9 at 27. They assert that an Independent Ombudsmen investigation determined that Plaintiff Wilson was denied care for up to six months for his debilitating spine condition due to systemic staff deficiencies that were not corrected by Defendants. *Id*. at 41. They allege that the preliminary finding from the Independent Ombudsmen investigation was that Plaintiff Wilson's medication, treatment, and overall medical care had been delayed and/or denied since November 2020. *Id*. at 27. Plaintiffs do not allege who was found to be responsible for the delays in Plaintiff Wilson's care, but they claim that in some cases, such as in a November 13, 2020 "(OCO) Investigative Report", Defendant Dr. Kariko's leadership ability was considered to be contributing to similar delays and/or denials in care. *Id*.

### 2. Plaintiff Lawrence

Plaintiffs assert that throughout the pandemic, Plaintiff Lawrence's access to medical care has been delayed and/or denied as a result of AHCC's clinical care

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 38

suspensions and the failure of the medical kite system.  ECF No. 9 at 32.  Plaintiffs

contend that, although reportedly ordered by his provider, Plaintiff Lawrence

experienced intervals of weeks where blood labs were not conducted, which ceased

all progression of any treatment because his conditions remain "unknown."  ECF

No. 9 at 42.  Plaintiffs claim that without an examination, Plaintiff Lawrence's

provider has offered him an antidepressant to treat his migraine symptoms without

knowing their cause and has failed to or outright refused to refer Plaintiff Lawrence

to a specialist.  *Id*. at 29, 32.  Plaintiff Lawrence's provider is not named as a

Defendant to this action.

Plaintiffs claim that Defendant Dr. Kariko, as Washington State DOC's Chief

Medical Officer, was a decision-maker in the DOC's Emergency Operations

Center.  ECF No. 9 at 10, 15.  They allege that Defendant Dr. Kariko permitted a

policy where Plaintiffs' essential diagnostic facts were not inquired into through

laboratory blood work-ups, physical examinations, or imaging.  *Id*. at 42.  They do

not, however, allege that Defendant Dr. Kariko directed the clinical care

suspensions during COVID-19 outbreak periods at AHCC.

Rather, Plaintiffs allege that HSM McIntyre, who is not named as a

Defendant to this action, directed the suspensions of medical care at AHCC during

COVID-19 outbreak periods.  ECF No. 9 at 33.  Plaintiffs claim that Defendants

Strange, Murphy, Uttecht, Miller, and Dr. Kariko knew on January 21, 2022, by

1    virtue of a DOC notice, that clinic and specialized services for AHCC inmates were

2    being "discontinued" indefinitely.  *Id*.  They contend that Defendants Strange,

3    Murphy, Uttecht, Miller, and Dr. Kariko knew or should have reasonably known

4    that Plaintiffs would be harmed by an interruption of medical services while they

5    were infected with COVID-19 and suffering from known serious medical

6    conditions.  *Id*.

7         Liberally construed, Plaintiffs have alleged sufficient facts to show that

8    Defendants Strange, Murphy, Uttecht, Miller, and Dr. Kariko were aware of a

9    deprivation of Plaintiffs' rights and failed to act.  As presented, Plaintiffs have

10   alleged sufficient facts to state a plausible Eighth Amendment denial of medical

11   care claim against Defendants Strange, Murphy, Uttecht, Miller, and Dr. Kariko.

12        **PLAINTIFFS' CONSTRUED MOTION FOR RECONSIDERATION**

13        BEFORE THE COURT is Plaintiffs' Construed Motion for Reconsideration.

14   ECF No. 7.  Plaintiffs ask that the Court's Second Order to Amend and Denying

15   Request for Joinder, ECF No. 6, "be rejected in part, and that [Plaintiffs'] complaint

16   be allowed to proceed to the discovery and motions phase, without further scrutiny,

17   so that the parties might be given a full and fair opportunity to answer the legitimate

18   inferences the Plaintiffs' FAC gives fair notice of, and the grounds upon which it

19   rests."  *Id*. at 2–3, 9.  Alternatively, Plaintiffs request de novo review of the Second

20   Order to Amend and Denying Request for Joinder.  *Id*. at 9.

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 40

On July 6, 2022, eight days after filing their Construed Motion for Reconsideration, Plaintiffs filed a Second Amended Complaint against all Defendants in their official and individual capacities.  ECF No. 9.  As discussed above, after a review of Plaintiffs' SAC and liberally construing the claims in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have alleged facts sufficient to state an Eighth Amendment claim against all of the named Defendants with respect to the COVID-19 response within AHCC.  The Court also finds that Plaintiffs have alleged sufficient facts to state an Eighth Amendment claim for relief against Defendant Sytsma related to the denial of a safe work environment, against Defendant Dr. Kariko for deliberate indifference to unsanitary conditions affecting Plaintiff Wilson in December 2020, and against Defendants Strange, Murphy, Uttecht, Miller, and Dr. Kariko for the denial of medical care.  In light of Plaintiffs' subsequent submissions, and for the reasons set forth in the instant screening Order, Plaintiffs' Construed Motion for Reconsideration is denied as moot.

### CONSTRUED MOTION FOR RECUSAL

BEFORE THE COURT is Plaintiffs' Construed Motion for Recusal.[3]  ECF No. 8.  "The standard for recusal under 28 U.S.C. §§ 144 [&] 455 is whether a

---

[3] The Court construes Plaintiffs' request for disqualification as a request for recusal of the undersigned judicial officer.

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 41

reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986) (quotations and citations omitted). "It is well settled that a motion for recusal under 28 U.S.C. § 144 or § 455…must be based upon prejudice from an extra-judicial source." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1301 (D.C. Cir. 1988). "[A] judge's prior adverse ruling[,]" which is not extra-judicial, "is not sufficient cause for recusal." *Studley*, 783 F.2d at 939. Further, 28 U.S.C. § 144 requires a party seeking recusal to file a "sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party…" 28 U.S.C. § 144. The affidavit must "state the facts and the reasons for the belief that bias or prejudice exists," and "[a] party may file only one such affidavit in any case." *Id*.

The undersigned judicial officer must initially determine whether Plaintiff has filed an affidavit that is legally sufficient. *See United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978) ("the judge against whom an affidavit of bias is filed may pass on its legal sufficiency") (citations omitted). "An affidavit filed pursuant to [28 U.S.C. § 144] is not legally sufficient unless it specifically alleges facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source." *United States v. Sibla*, 624 F.2d 864, 868 (9th Cir. 1980).

Each Plaintiff has filed a declaration under penalty of perjury in support of their Construed Motion for Recusal. ECF No. 8-1 at 1–2; ECF No. 8-2 at 1–2. The Court finds Plaintiffs' declarations to be legally insufficient. An affidavit filed under 28 U.S.C. § 144 is not legally sufficient unless it specifically alleges facts that fairly support the contention that a judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source. *Sibla*, 624 F.2d at 868. Plaintiffs' declarations contain only assertions disputing the Second Order to Amend and Denying Request for Joinder issued by the undersigned judicial officer and is devoid of specific factual allegations tending to show personal bias stemming from an extrajudicial source. *See Studley*, 783 F.2d at 939.

In their declarations, Plaintiffs contend that their questions regarding the undersigned judicial officer's impartiality "rise and rely solely on his June 9, 2022 ruling in this case…" ECF No. 8-1 at 1; ECF No. 8-2 at 1. Plaintiffs have offered no basis for recusal other than their disagreement with this Court's Second Order to Amend and Denying Request for Joinder. Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See Davis v. Fendler*, 650 F.2d 1154, 1163 (9th Cir. 1981) ("In the absence of specific allegations of personal bias, prejudice, or interest, neither prior adverse rulings of a judge nor his participation in a related or prior proceeding is sufficient" to require recusal). The

1  Court thus finds no basis for recusal in this matter and therefore, Plaintiffs'

2  Construed Motion for Recusal is denied.

## CONSTRUED REQUEST FOR ELECTRONIC FILING EXEMPTION

3

4

5        BEFORE THE COURT is Plaintiffs' Construed Request for an Exemption

6  from Electronic Filing with the Court. ECF No. 10. Plaintiffs assert that there is

7  good cause for abeyance of Federal Rule of Civil Procedure 5(d)(3)(B)(ii), which

8  states that unrepresented parties "may be required to file electronically only by court

9  order, or by a local rule that includes reasonable exceptions." *Id*. at 1, citing Fed.

10  R. Civ. P. 5(d)(3)(B)(ii).

11        Plaintiffs contend that abeyance of FRCP Rule 5(d)(3)(B)(ii) is necessary in

12  this case because Defendants' agents are Plaintiffs' sole source of ECF access and

13  since January 2022, these agents have not presented themselves as faithful

14  facilitators with respect to the ECF filing process. ECF No. 10 at 1–2. Plaintiffs

15  claim that they have experienced exceptional and unjustified delays in the

16  transmission of ECF notifications, especially when they include orders from the

17  Court, and these delays have prejudiced Plaintiffs' ability to timely meet the Court's

18  amendment requirements. *Id*. at 2. Plaintiffs allege that the Court's Second Order

19  to Amend and Denying Request for Joinder, ECF No. 6, was delayed and Plaintiffs

20  received a copy by U.S. Mail from an outside source two days before Defendants'

agents provided them with a copy. *Id*. at 2–3. They claim that due to repetitive delays in receiving ECF notifications from the Court, Plaintiffs' have been prejudiced and Defendants have hindered Plaintiffs' communication conduit to the Court. *Id*. at 3.

Further, Plaintiffs claim that they are denied access to ECF services during COVID-19 lockdowns in AHCC, and lockdowns have historically lasted for weeks. ECF No. 10 at 2. They also allege that due to COVID-19 mitigation efforts within AHCC, there is limited law library access and ECF filing access is not guaranteed due to high volumes of law library request "turn aways." *Id*.

This District's Local Civil Rule 3(b)(1) states, "(1) In General. All civil cases shall be filed electronically using the Electronic Filing System and shall be governed by the Court's Administrative Procedures for Electronic Case Filing…" LCivR 3(b)(1). Plaintiffs' Construed Request for an Exemption from Electronic Filing with the Court is denied at this time, as Plaintiffs have the ability to file motions for extensions of time with the Court should they need additional time to prepare and file documents in this case. To date, no such extension requests have been filed.

## FINAL OPPORTUNITY TO AMEND

Liberally construing Plaintiffs' SAC, Plaintiffs have alleged sufficient facts at Count One to state an Eighth Amendment claim against all of the named

THIRD AND FINAL ORDER TO AMEND COMPLAINT… -- 45

Defendants with respect to the COVID-19 response within AHCC. Plaintiffs have also alleged sufficient facts at Count One to state an Eighth Amendment claim for relief against Defendant Sytsma related to the denial of a safe work environment. At Count Two, Plaintiffs have alleged sufficient facts to state a plausible Eighth Amendment claim against Defendant Dr. Kariko for deliberate indifference to unsanitary conditions affecting Plaintiff Wilson in December 2020. At Count Three, Plaintiffs have alleged sufficient facts to state a plausible Eighth Amendment denial of medical care claim against Defendants Strange, Murphy, Uttecht, Miller, and Dr. Kariko.

As presented, the Court finds that at Count One, Plaintiffs have failed to state a claim upon which relief may be granted against any Defendant related to the processing of or responses to their grievances. The Court also finds that at Count Two, Plaintiffs' present allegations fail to state a claim upon which relief may be granted against any Defendant for denial of heat during winter weather conditions, against any Defendant, other than Dr. Kariko, for deliberate indifference to unsanitary conditions affecting Plaintiff Wilson in December 2020, or against any Defendant for deliberate indifference to unsanitary conditions concerning both Plaintiffs on January 21, 2022.

Unless it is absolutely clear that amendment would be futile, a *pro se* litigant must be given the opportunity to amend his complaint to correct any deficiencies.

*Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded by statute on other grounds,* 28 U.S.C. § 1915(e)(2), *as stated in Aktar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).  In response to Plaintiffs' assertions in their Construed Request for an Exemption from Electronic Filing with the Court, ECF No. 10, related to COVID-19 lockdowns and potential limited access to the law library due to COVID-19 mitigation efforts within AHCC, Plaintiffs may submit a Third and Final Amended Complaint within **forty-five (45) days** of the date of this Order which must include sufficient facts to state a claim upon which relief may be granted against each named Defendant.  Plaintiffs shall clearly and concisely state facts showing that the identified Defendants violated their Eighth Amendment rights as to each claim.

Plaintiffs' Third Amended Complaint shall consist of a **<u>short</u>** and **<u>plain</u>** statement showing that Plaintiffs are entitled to relief.  Plaintiffs shall allege with specificity the following:

(1) the names of the persons who caused or personally participated in causing the alleged deprivation of their constitutional rights,

(2) the dates on which the conduct of each Defendant allegedly took place, and

(3) the specific conduct or action Plaintiffs allege is unconstitutional.

Furthermore, Plaintiffs shall set forth their factual allegations in separate numbered paragraphs.  PLAINTIFFS' THIRD AMENDED COMPLAINT WILL

THIRD AND FINAL ORDER TO AMEND COMPLAINT... -- 47

OPERATE AS A COMPLETE SUBSTITUTE FOR (RATHER THAN A MERE SUPPLEMENT TO) THE PRIOR AND PRESENT COMPLAINTS. Plaintiffs shall present their amended complaint on the form provided by the Court. Plaintiffs' Third Amended Complaint must be legibly rewritten or retyped in its entirety, it should be an original and not a copy, it may not incorporate any part of the original or present complaints by reference, and **PLAINTIFFS' THIRD AMENDED COMPLAINT MUST BE CLEARLY LABELED THE "THIRD AMENDED COMPLAINT." Plaintiffs' Third Amended Complaint must be clearly labeled with cause number 2:22-CV-0014-TOR written in the caption.**

If Plaintiffs choose not to amend their complaint within this forty-five-day period, the Court will proceed to dismiss the SAC in part for failure to state a claim upon which relief may be granted. The Court will then direct that Plaintiffs' plausible Eighth Amendment deliberate indifference claims, as stated above, be served on Defendants in accordance with this Order.

Accordingly, **IT IS HEREBY ORDERED**:

    **1.** Plaintiffs' Construed Motion for Reconsideration, **ECF No. 7**, is **DENIED as moot**.

    **2.** Plaintiffs' Construed Motion for Recusal, **ECF No. 8**, is **DENIED**.

    **3.** Plaintiffs' Construed Request for an Exemption from Electronic Filing with the Court, **ECF No. 10**, is **DENIED**.

**4.** Plaintiffs may file a Third and Final Amended Complaint **within forty-five (45) days** of the date of this Order, consistent with the instructions set forth above.

    *A.* If Plaintiffs fail to file **within forty-five (45) days** as directed, the Court will proceed to dismiss the Second Amended Complaint in part for failure to state a claim upon which relief may be granted, consistent with the instructions set forth above.

    *B.* The Court will then direct that Plaintiffs' Eighth Amendment deliberate indifference claims be served on Defendants, consistent with the instructions set forth above.

**5.** The Clerk's Office shall **SET** a case management deadline **forty-five (45) days** after the date of this Order.

**IT IS SO ORDERED**. The Clerk's Office is directed to enter this Order and forward a copy to both Plaintiffs, **along with a civil rights complaint form**.

DATED August 3, 2022.



THOMAS O. RICE
United States District Judge

THIRD AND FINAL ORDER TO AMEND COMPLAINT... -- 49